UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

In re:                                                                                    Bankruptcy No. 04-32086
                                                                                          Chapter 7
Wayne Arthur Hrabik
and Shelly Diann Hrabik,

             Debtors.
_____/

Valley Memorial Homes,

             Plaintiff,

      vs.                                                                                Adversary No. 05-7013

Wayne Arthur Hrabik
and Shelly Diann Hrabik,

             Defendants.
_____/

**MEMORANDUM AND ORDER**

By Complaint filed February 25, 2005, Valley Memorial Homes initiated this adversary proceeding seeking a determination that Debtor Wayne Arthur Hrabik's outstanding obligation to it for his mother's care in the amount of $3,941.75 is nondischargeable pursuant to 11 U.S.C. § 523(a)(2), (4) and (6).  The Debtor filed an Answer and Counterclaim on March 25, 2005, denying the allegations.

I.  Findings of Fact

Wayne Hrabik's mother, Marcella A. Hrabik, executed a durable power of attorney, dated October 9, 2001, designating Wayne Hrabik as her attorney in fact and stating that he was to handle all of her financial matters.  It provided that he was to pay all of her "just debts and expenses" and

to do whatever was necessary and proper in the management of her affairs. The power of attorney was to be used for her benefit and exercised only in a fiduciary capacity.

A.      Valley Memorial Homes

Marcella Hrabik lived independently and managed her own affairs until she was hospitalized because of a fall in March 2002. She was admitted to Valley Memorial Homes' long-term care facility on April 9, 2002.

On April 25, 2002, Valley Memorial Homes sent a letter to Wayne Hrabik stating that it had made a determination that the services furnished to her after April 25, 2002, would not qualify for payment by Medicare. It further stated:

> This decision has not been made by Medicare. It represents our judgement that the services you needed no longer meet Medicare payment requirements. A bill will be sent to Medicare for the services you received up to and including April 25, 2002. Normally, the bill submitted to Medicare does not include services provided after this date. If you want to appeal this decision, you must request that the bill being submitted to Medicare include the services we determined to be non-covered. Medicare will notify you of its determination. If you disagree with that determination, you may file an appeal.
>
> Under provision of the Medicare law, you do not have to pay for non-covered services determined to be custodial care or not reasonable or necessary unless you had reason to know the services were non-covered. You are considered to know that these services were non-covered effective with the date of this notice.
>
> Please check one of the boxes on the next page to indicate whether or not you want your bill submitted to Medicare and sign the notice to verify receipt.

Wayne Hrabik signed the attached sheet verifying he received notice of non-coverage of services under Medicare on April 30, 2002. He also marked the option that states:

> I *do* want my bill for services I continue to receive to be submitted to the intermediary for Medicare decision. You will be informed when the bill is submitted.

> If you do not receive a formal *Notice of Medicare Determination* within 90 days of this request, you should contact:
>
> BLUE CROSS BLUE SHIELD of North Dakota
>
> 4510 13th Avenue Southwest
>
> Fargo, ND 58121-0001
>
> \* \* \*
>
> *NOTE: Beginning October 1st, 1989, you are not required to pay for services which could be covered by Medicare until a Medicare decision has been made.*

An administrative officer signed the attached sheet verifying that Wayne Hrabik was advised of the non-coverage of services under Medicare by telephone on April 25, 2002.

Wayne Hrabik sent a letter to Valley Memorial Homes on April 30, 2002, stating that he felt Medicare coverage should be continued based on his examination of Marcella Hrabik's medical records:

> It is my opinion that since Altru [Hospital] recommended continued therapy and supervision at an outside facility, that Marcella continue to be covered by Medicare coverage until such time that a licensed doctor can re-evaluate her condition. I do not feel, after reading the reports from Altru, that Marcella's medical condition has stabilized and do not feel that coverage should be discontinued.

A billing statement sent to Wayne Hrabik dated May 1, 2002, contains a handwritten note made by Diane Lundgren, the Valley Memorial Homes employee who files Medicare claims and handles collections, stating: "You are not obligated to pay any nursing services until we get a notice from Medicare on your appeal. Pay for personal charges only at this time for 20.00. Thank you". A billing statement sent to Wayne Hrabik dated June 1, 2002, had the same handwritten note on it.

Marcella Hrabik left Valley Memorial Homes and moved to St. Anne's Guest Home on June 20, 2002.

Valley Memorial Homes sent a billing statement dated July 1, 2002, to Wayne Hrabik with a note handwritten by Lundgren stating, "I have sent a final claim to Medicare to see if they will pay. Demand bill for April was paid by Medicare. Pay personal charges for now. Thank You." The note on the August 1, 2002, billing statement says, "You owe 67.00 for haircare from last month's billing. We never received the payment. Balance of 7,883.50 has been filed to Medicare to see if they will approve payment. Pay personal charges only at this time. Thank you." The September 1, 2002, billing statement says: "Medicare appeals were denied. Total amount is due at this time. Thank you." The total amount on that statement is $7,883.50.

Lundgren testified that even though she used the word "appeal" on the statements, it was actually a demand claim to see if Medicare would pay for the services. She sent two demand claims to Medicare. After Valley Memorial Homes makes a demand billing, Medicare sends a notice of its determination to both Valley Memorial Homes and the representative of the resident. If Medicare denies coverage, a resident may appeal the Medicare determination on her own. However, Valley Memorial Homes has the right to collect from the resident once Medicare denies coverage even if the resident appeals. If the appeal is successful, Valley Memorial Homes refunds the payments made by the resident.

The October 1, 2002, billing statement contains a note saying, "Please advise as to when payment will be made. Medicare denied the appeal." The November 1, 2002, billing statement did not have a handwritten note by Lundgren, but still showed $7,883.50 due.

Wayne Hrabik testified that he began to question the appeal process at this point. He wrote a letter to Valley Memorial Homes dated November 12, 2002 stating: "No payment or interest will be paid on this account at this time, payment pending decision of the appeal." He testified he wanted

4

an explanation for the charges to determine whether they were appropriate, but he was denied access to Marcella Hrabik's health records by his brother, Ron Hrabik, who held a power of attorney for Marcella Hrabik's health care. Wayne Hrabik testified he did not pay Valley Memorial Homes because it ignored and denied his requests for information on billing issues and appeal procedures. He had a duty to review his Marcella Hrabik's expenses, and he questioned Valley Memorial Homes' billings because the amount due changed from one statement to the next and he thought Valley Memorial Homes was going to file an appeal with Medicare.

The billing statement dated December 1, 2002, states, "Please send payment. This is past due. Medicare denied your appeal. Thank you."

Wayne Hrabik sent a letter to Greg Hanson, president and chief executive officer of Valley Memorial Homes dated December 11, 2002, stating he had not received any documents indicating Medicare had denied the appeal. The letter states, "I am requesting to see all correspondence sent to Medicare on behalf of my mother's appeal." He wrote another letter on January 9, 2003, stating he would not be making further payments because Valley Memorial Homes did not notify him of the appeals meetings, Marcella Hrabik died on December 31, 2002, and "there is no money left."

Greg Hanson testified he had several telephone conversation with Wayne Hrabik after the demand claims were processed by Medicare and explained to him that the demand claims had been sent to Medicare, Medicare had denied coverage, and Hrabik had to pay the bill. Hanson sent a letter to Wayne Hrabik dated January 24, 2003, in response to one of the telephone calls. It explained what Hanson had told Hrabik over the phone — that Valley Memorial Homes had sent a final demand claim to Medicare on July 2, 2002, and Medicare denied the claim on September 9, 2002. He explained again that once Medicare makes a determination, it is the responsibility of the representative

5

to file the first appeal to Medicare. He informed Hrabik that forms are available at the Social Security office, and if the first appeal is denied, the representative may file a second appeal.

Wayne Hrabik made a telephone call to Medicare pursuing the appeal. He received a letter dated January 24, 2003, from Noridian Administrative Services acknowledging his request for an appeal of the Medicare non-coverage decision. It stated that Marcella Hrabik's claim had not been appealed previously.

B.     Wayne Hrabik as Attorney in Fact

Wayne Hrabik is a construction supervisor. At the time of his mother's hospitalization, he was unemployed. In August 2002 he worked for five weeks in Fargo, and had contact with Marcella Hrabik three or four times each day. He testified he quit the job after five weeks because she wanted him available to her.

Once Marcella was hospitalized, Wayne Hrabik began writing checks from her account. On March 28, 2002, he wrote a check payable to himself for $1,000.00. On April 3, 2002, he wrote a check to Community National Bank for $1,429.19 with the notation "Gift to son Wayne." On April 12, 2002, he wrote a $300.00 check for cash for reimbursement of moving expenses. He wrote another check to himself for moving expenses for $500.00 on April 15, 2002. On May 23, 2002, he wrote a $1,300.00 check to himself for "storage fees and pay mom's bills." On June 5, 2002, he wrote himself a $1,500.00 check to "Pay Marcella Hrabik's Bills." Without detailing every check, he wrote many checks to himself purportedly for reimbursement of Marcella Hrabik's expenses. He also cashed more than $1,900.00 worth of checks at Johnny's Lounge. Some of the cashed checks include a note on the memo line, such as "Mom's meds," but not all of them. Other checks were

6

written to St. Anne's Guest Home, a storage business, a paint supply company, a lumber company, a telephone company, eye clinics, a utilities provider, and a cellular phone company.

On April 1, 2002, he transferred $13,563.74 from Marcella Hrabik's account to an account in his and his brother's names. He testified he transferred th money to make bill paying easier because he had difficulty cashing checks from the other account. Notwithstanding, he continued to write checks from Marcella Hrabik's account as discussed above. From the account in his and his brother's names, he also wrote several checks to himself totaling $5,500.00, with vague notes on the memo line such as "bill paying for mom." He also cashed many checks from this account, totaling more than $2,200.00, at Johnny's Lounge. Although Wayne Hrabik testified he wrote these checks to reimburse himself for cash he used to pay Marcella Hrabik's expenses, he also wrote checks from this account to St. Anne's Guest Home, several pharmacies, a grocery store, a clock repair store, a book store, the local newspaper and a cable television company. He wrote checks from this account to pay his mortgage and to buy vehicle parts for his car because he used it to transport his mother. He made truck payments. He paid a speeding ticket. He paid $1,429.00 in taxes. He paid rent for the apartment in Fargo where he worked in August and September of 2002, and he cashed a $50.00 check at a bar in Fargo. He testified that Marcella Hrabik told him to pay bills with cash and to reimburse himself by writing checks against the account.

Wayne Hrabik testified he cashed checks at Johnny's Lounge because his friends own it and he is well known. He said Marcella Hrabik provided financial assistance to him while he was unemployed so he would be available to her. Some of the checks were purportedly written for repairs to a bedroom and bathroom in the Debtors' home so Marcella Hrabik could live with them, but she did not ever live with them. The repairs included carpeting, wiring, furnace, filters, a heating coil,

7

and new duct work. He stated he incurred moving expenses for moving her several different times. He testified Marcella Hrabik told him to write all of the checks, and he considered himself a "just expense."

Wayne Hrabik also testified that he and his brother reviewed the checks written on the two bank accounts every Friday afternoon until his brother denied him access to their mother's health records. He testified he also went over the checks written on the accounts with Marcella Hrabik every Sunday afternoon.

The Debtors filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on November 29, 2004. Wayne Hrabik paid all of Marcella Hrabik's debts except the debt owed to Valley Memorial Homes.

## II. Conclusions of Law

The statutory exceptions to discharge in bankruptcy are narrowly construed to effectuate the fresh start policy of the Bankruptcy Code. Owens v. Miller (In re Miller), 276 F.3d 424 (8th Cir. 2002). Accordingly, a creditor opposing discharge of a debt must prove the debt falls within an exception to discharge. Werner v. Hofmann, 5 F.3d 1170, 1172 (8th Cir. 1993). The standard of proof for exceptions to discharge under 11 U.S.C. § 523(a) is the preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 286 (1991).

1.   11 U.S.C. § 523(a)(2)(A)

The Bankruptcy Code excepts from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by— (A) false pretenses, a false representation, or actual fraud . . . ." 11 U.S.C. § 523(a)(2)(A). The language "obtained by" clearly indicates that the fraudulent conduct occurred at the inception of the debt, i.e., the debtor committed

8

a fraudulent act to induce the creditor to part with its money, property or services.  See Community Nat'l Bank v. Slominski (In re Slominski), 229 B.R. 432, 435 (Bankr. D.N.D. 1998).  If this threshold showing is made, the creditor must prove each of the following elements to establish nondischargeability of a debt under section 523(a)(2)(A):

   (1)   the debtor made a representation;
   (2)   the debtor knew the representation was false at the time it was made;
   (3)   the representation was deliberately made for the purpose of deceiving the creditor;
   (4)   the creditor justifiably relied on the representation; and
   (5)   the creditor sustained the alleged loss as the proximate result of the representation having been made.

Burt v. Maurer (In re Maurer), 256 B.R. 495, 500 (B.A.P. 8th Cir. 2000); Legendary Leasing, Inc. v. Glatt, (In re Glatt) 315 B.R. 501, 509 (Bankr. D.N.D. 2004).

To sustain a claim of nondischargeability under section 523(a)(2)(A), Valley Memorial Homes therefore must make a threshold showing that the alleged fraud existed at the time of, and has been the methodology by which, the money, property or services were obtained.  Burbank v. Capelli (In re Capelli), 261 B.R. 81, 88 (Bankr. D. Conn. 2001); Wilcoxon Construction, Inc. v. Woodall (In re Woodall), 177 B.R. 517, 523 (Bankr. D. Md. 1995).  Misrepresentations made subsequent to the creation of the debt "have no effect upon the dischargeability of a debt, since the false representation could not have been the creditor's reason for the extension of credit."  In re Woodall, 177 B.R. at 524 (citation and internal quotation marks omitted); see also 4 L. King, Collier's on Bankruptcy, § 523.08[1][d], 523-44 (15th ed.1999) ("If the property or services were obtained before the making of any false representation, subsequent misrepresentations will have no effect on dischargeability.")

Valley Memorial Homes does not argue that Wayne Hrabik obtained the services provided to Marcella Hrabik through fraud or misrepresentation.  Instead, it alleges he failed to pay Marcella

9

Hrabik's debts as they became due and instead used his power of attorney to fraudulently transfer Marcella Hrabik's funds to himself. This allegation, even if true, is insufficient to support a claim under section 523(a)(2)(A) because the services provided to Marcella Hrabik by Valley Memorial Homes were not obtained through any alleged fraud or misrepresentation. Valley Memorial Homes therefore fails to meet the threshold requirement of section 523(a)(2)(A).

2.      11 U.S.C. 523(a)(4)

The Bankruptcy Code provides that an individual debtor in a Chapter 7 case is not discharged from any debt "for fraud or defalcation while acting in a fiduciary capacity[.]" 11 U.S.C. § 523(a)(4). To prevent the discharge of the Wayne Hrabik's debt under section 523(a)(4), Valley Memorial Homes must establish the following two elements: (1) Wayne Hrabik was acting in a fiduciary capacity; and (2) he committed fraud or defalcation in the course of that fiduciary relationship. See Jafarpour v. Shahrokhi (In re Shahrokhi), 266 B.R. 702, 707 (B.A.P. 8th Cir. 2001).

Whether a relationship is a fiduciary relationship within the meaning of 11 U.S.C. § 523(a)(4) is an issue of federal law. Tudor Oaks Ltd. Partnership v. Cochrane (In re Cochrane), 124 F.3d 978, 984 (8th Cir. 1997), cert. denied, 522 U.S. 1112 (1998). "'[T]he fiduciary relationship must be one arising from an express or technical trust that was imposed before and without reference to the wrongdoing that caused the debt.'" Id. (quoting Lewis v. Scott, 97 F.3d 1182, 1185 (9th Cir. 1996)). An express or technical trust may be one in which a formal document is executed which establishes the rights and duties of the parties, or one in which trust-type obligations are imposed pursuant to statute or common law. Bast v. Johnson (In re Johnson), 174 B.R. 537, 541 (Bankr. W.D. Mo. 1994). As a rule, the general fiduciary duty created by a power of attorney gives rise to an agency relationship, but does not give rise to the fiduciary capacity required by section 523(a)(4). Id.

10

However, if a debtor has a sufficiently elevated level of fiduciary duty, section 523(a)(4) may apply to an agency relationship. See id. Such a fiduciary duty is found, for example, when one party to a fiduciary relationship is incapable of monitoring the other's behavior. See id.

In this case, Wayne Hrabik's duty was sufficiently elevated to the level of a fiduciary duty. The power of attorney expressly stated that it was to be used solely for Marcella Hrabik's benefit and exercised only in a fiduciary capacity. Moreover, Wayne Hrabik transferred more than $13,000.00 to an account in his and his brother's names, thereby eliminating Marcella Hrabik's control over a considerable part of her own funds.

The remaining issue is whether Wayne Hrabik's conduct constituted fraud or defalcation under 11 U.S.C. § 523(a)(4). Defalcation is defined as the misappropriation of trust funds or money held in any fiduciary capacity or the failure to properly account for such funds. In re Cochrane, 124 F.3d at 984. Under section 523(a)(4), defalcation is construed broadly and includes the innocent default of a fiduciary who fails to account fully for money received. Id An individual may be liable for defalcation without having the intent to defraud. Id.

Wayne Hrabik failed to properly account for Marcella Hrabik's funds that he transferred to himself. Although he avers Marcella Hrabik instructed him to write the checks and knew about all of them, his testimony is self-serving and unsupported by any other evidence. His claim that the checks cashed at Johnny's Lounge were for reimbursement for expenses he paid with cash is incredible given that he wrote checks for nearly every conceivable need of a resident of a long-term facility including eye care, prescriptions, storage, telephone service, books, newspapers, television service and groceries. Although other expenses for clothing and incidental items are within the realm of reason, Wayne Hrabik's transfers to himself for purported expenses grossly exceeds even

imagination, particularly given his utter lack of record keeping. Moreover, he made his mortgage, rent and truck payments. He bought vehicle parts and paid a speeding ticket. He paid $1,429.00 in taxes. His course of dealing with his mother's funds simply cannot be recognized as the necessary and proper management of her affairs, and his conduct constitutes defalcation under section 523(a)(4).

      3.      11 U.S.C. § 523(a)(6)

The Bankruptcy Code provides that an individual debtor in a Chapter 7 case is not discharged from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). In this context, the term willful means deliberate or intentional. Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998); Hobson Mould Works, Inc. v. Madsen (In re Madsen), 195 F.3d 988, 989 (8th Cir. 1999). The injury, and not merely the act leading to the injury, must be deliberate or intentional. Geiger, 523 U.S. at 61-62. Malice requires conduct which is targeted at the creditor, at least in the sense that the conduct is certain or almost certain to cause financial harm. Madsen, 195 F.3d at 989. Malice requires conduct more culpable than that which is in reckless disregard of the creditor's economic interests and expectancies. Ehrman v. Feist (In re Feist), 225 B.R. 450, 454 (Bankr. N.D. 1998). A debtor acts with malice by intending or fully expecting to harm the economic interests of the creditor. Id. The debtor's knowledge that he or she is violating the creditor's legal rights is insufficient to establish malice absent additional aggravating circumstances. Johnson v. Logue (In re Logue), 294 B.R. 59, 63 (B.A.P. 8th Cir. 2003).

Valley Memorial Homes has failed to prove that Wayne Hrabik willfully injured it. For Valley Memorial Homes to prevail, it must show Wayne Hrabik intended to injure it through his conduct,

12

not merely that he intentionally acted in a manner that lead to the injury. It has not done so, and the claim under section 523(a)(6) fails.

The outstanding obligation owed by Debtor Wayne Arthur Hrabik to Valley Memorial Homes in the amount of $3,941.75 is nondischargeable pursuant to 11 U.S.C. § 523(a)(4). The counterclaim of Debtors Wayne Arthur Hrabik and Shelly Diann Hrabik is without merit and is hereby DISMISSED.

**SO ORDERED.**

**JUDGMENT MAY BE ENTERED ACCORDINGLY.**

Dated this July 28, 2005.

**WILLIAM A. HILL, JUDGE
U.S. BANKRUPTCY COURT**